The opinion of the Court was delivered by
Dtjnkin, Ch.
The defendant, Doby, having been long the indulgent creditor of Henry R. Price, had removed to the West. Hearing of Price’s pecuniary embarrassments, and “ influenced (as he says in his answer) as much by his solicitude for the welfare of the family of Price, who was nearly related to him by marriage (as to secure the payment of his debt) he came on a visit to Lancaster, in June, 1855, on this and other business.” Before his return home, to wit, on 23d June, 1855, he left a power of attorney with David M. Crockett, *412 to collect all his debts, and particularly that due by Henry R. Price; and to procure, if he could, a confession of judgment from Price for his debt, and to lodge execution ; and if such execution should be older than any except those already existing against Price, and his property should be brought to sale, he. authorized his attorney to bid off the property to the extent that the proceeds of sale might be applicable to his execution, and to settle the same, with the exception of one tract of land, to the sole and separate use of Nancy Price, the wife of the said Henry R. Price, during her natural life, and, after her death, to her daughter, Henrietta, in fee. On 10th July, 1855, Price confessed a judgment to Doby,for $4,739.54, with interest from 13th December, 1851, on a demand which the pleadings admit to be justly due to him. Oír 14th July, 1855, he confessed another judgment to him for $648, which, the answer states, was omitted by mistake, but which the plaintiff charges was not due, “ as he is informed and believes that the former judgment embraced all that Price owed him.” Under various executions Prices’ property was brought to sale by the sheriff on 3d December, 1855. The aggregate of Doby’s debt was $6,754.49. Both Price and Doby deny any agreement on which the judgment was confessed, but Price says that he was aware of the power of attorney, and that “ after this manifestation of generosity on the part of Doby, he admits that he more cheerfully confessed the judgment;” but he denies that the confession was made with any fraudulent intention, and submits that the arrangement proposed by Doby has not operated to the injury of the plaintiff or of any other creditor. The sales made in December, 1855, and after-wards, amounted to a larger sum than was necessary to pay the debt of Doby, as well as the prior executions, but not enough to reach the junior execution of the plaintiff. There is no suggestion that the property did not bring its full value. Crockett, the attorney of Doby, purchased at the sales, seven negroé's, one of whom afterwards died, and he states in his answer, that he hired four to Price, and two to another per *413 son. The fraud in the confession of judgment is alleged to be established by the provision which Doby was to make for the wife and family of Price. Of course, it is equally fraudulent or innocent whether Doby’s agent did, or did not, afterwards purchase, at the sheriff’s sales, any part of the property. With the exception of the value of the negroes, ($3,300,) the amount of Doby’s judgments has been reserved by Crockett, his attorney, or is subject to his order. The plaintiff alleges that the amount reserved by Doby for himself, did not'exceed two thousand dollars, and that the surplus of the amount due on the judgments, (probably some five thousand dollars) is settled, or to be settled, on the family of Price.
Certainly a judgment may be fraudulent though the amount for which it is confessed be bona fide due. This principle is recognized in Bird vs. Aitken, Rice Eq. 73, as where one renders assistance to a debtor to enable him to defraud his other creditors, this is a fraud upon the part of him who assists. The bonafides of his own debt will not sanctify the transaction, and Pickett vs. Pickett, 2 Hill, Ch. 470, is cited as a striking illustration, in which a bona fide.purchaser assisted an absconding debtor in eloigning his property. But in the same case of Bird vs. Aitkm, it was authoritatively adjudged that the mere fact of securing a preference of his own debt by a confession of judgment “ does not constitute an unlawful or fraudulent'hinderance, as to the unpreferred creditors.” “ It cannot be doubted,” says Chancellor Harper, “ that the mere preference of one creditor to another cannot impeach .the transaction; and, if there were nothing else in this case than that Aitken had given a voluntary preference by confessing the judgment, that could not be impeached though he might have foreseen that the effect would be to defeat other creditors. That would not be a fraudulent, but a lawful, purpose. There is no fraud either in the debtor or the preferred creditor.” The Court of Appeals affirmed the doctrine, and furthermore held that there was nothing in that case to invalidate the transaction. While the law thus allows the *414 debtor-to give a preference among his creditors, it will not allow him to secure an advantage to himself, at the expense of creditors, as the price of such preference — that, in every case, the inquiry should be as to the rights of the creditors — and in preserving those rights care should be taken that an act of spontaneous kindness- and indulgence on the part of the creditor be not confounded with fraud in the debtor. The best feelings should not be chilled and stifled by an overweening tendency to detect collusion. “My own experience/’ said the late wise and venerable President of this Court, in Maples vs. Maples, Rice Eq. 300, “my own experience-is that a great deal of fraud is committed in carrying out the rules which have been prescribed for its prevention.” In this case Price expected and believed that, if his property should be sufficient to reach and satisfy the execution, his humane and generous creditor would settle upon vhis family the larger part of the money to be realized. If there were any question of the reality and bona fides of the debt, such unwonted liberality might provoke suspicion. But it is substantially conceded that the debt was justly due. The debtor’s, property was exposed to public sale — brought a fair price — and the proceeds have been applied to the discharge of this and older execution creditors. At what expense, then, of the junior creditors is it that an advantage is given out of the proceeds of sale to the family of the debtor. The larger portion of the property must have been purchased by strangers, and a considerable portion of the fund belonging to the defendant is still in. the hands of the Sheriff. If the defendant thought proper to give it to a third person, or to a charitable institution, no one would doubt his right, nor would any unpaid creditor of Price surmise that the defendant’s liberality had been exercised at his expense. Nor is it any more at his expense that the family of Price have been the objects of his bounty. The transaction is yet incomplete. The money is not yet paid over to the defendant’s agent, and the settlement has not, consequently, been yet made. But this Court consi *415 ders that as done which is agreed to be done. The property, whatever it be, is held subject to the terms of the settlement. After the case of Arundell vs. Phipps, 10 Ves. 140, and our own case of Maples vs. Maples, it will not be contended that a possession is fraudulent which is in accordance with the terms of tjie deed.
It is ordered and decreed that the decree of the Circuit Court be reversed, and that the bill be dismissed.
Johnston and Wardlaw, CC., concurred.

Decree reversed.

*416
i